■ ALLEN & COMPANY, INCORPORATED, Appellant, v SHEARSON LOEB RHOADES, INC., Respondent. — Order, Supreme Court, New York County (William P. McCooe, J.), entered February 22, 1984, which granted defendant's motion to vacate an arbitration award, is unanimously reversed, on the law, the motion is denied, and the award is reinstated, with costs.

Plaintiff Allen & Company, Incorporated, a New York corporation, is engaged in the business of investment banking. Defendant Shearson Loeb Rhoades, Inc., a Delaware corporation, is authorized to do business in New York as a broker-dealer of securities.

Sometime in 1979, plaintiff became a customer of defendant. In or about August 1980, the plaintiff had in its account with defendant, among other holdings, approximately 298,569 shares of stock issued by Pancontinental Mining Limited (Pancontinental), an Australian corporation. These shares had been purchased by plaintiff through defendant, and most of them were held in defendant's name in Australia by ANZ Nominees Limited (ANZ).

Furthermore, in August 1980, Pancontinental decided to offer to its shareholders the right to purchase, as a new "offering", shares and options in a newly formed subsidiary, Pancontinental Petroleum Limited (Petroleum). However, even though Pancontinental shareholders, who were United States citizens would be eligible to participate, Pancontinental did not register the "offering" with the United States Securities and Exchange Commission.

By letter, dated August 15, 1980, ANZ advised defendant of this new "offering" by Pancontinental. On the face of the letter was stamped: "URGENT. THIS IS AN IMPORTANT LETTER WHICH REQUIRES YOUR PROMPT ATTENTION". This letter stated, in pertinent part, that, in order to take advantage of this "offering", a shareholder had to act *"by 4th September, 1980, at the latest"* (emphasis added).

Allegedly the defendant did not timely notify plaintiff of the subject "offering", so plaintiff was unable to take advantage of it. Therefore, plaintiff commenced a legal action in this State against defendant, upon the basis that it had suffered financial loss, as a consequence of this lost opportunity. In response, defendant justified its action, by claiming that notification to plaintiff, a United States citizen, of the "offering" of these unregistered securities, would have violated the Federal Securities and Exchange Act of 1933 and subjected the defendant to criminal and civil sanctions.

Pursuant to the rules of the National Association of Securities Dealers (NASD), of which both plaintiff and defendant were members, defendant demanded arbitration of this dispute. Plaintiff acceded to the defendant's demand and, accordingly, plaintiff filed a statement of claim in arbitration in the instant controversy. The NASD appointed the arbitrators, who were all persons active in the securities industry and fully familiar with the technical aspects of transactions like the one in dispute.

Subsequently, plaintiff's action at law was stayed, while the arbitration went forward. After the hearing of evidence was completed, the arbitrators, unanimously, made an award in favor of plaintiff against defendant in the amount of $164,985.31.

Following this award, defendant moved to vacate it, pursuant to CPLR 7511 (b) and the Federal Arbitration Act, 9 USC § 10, upon the ground that the award is in violation of the public policy of the United States, as set forth in the Federal securities laws. Plaintiff opposed. Special Term granted defendant's motion.

We find that Special Term erred.

Both the Federal Government (*Southland Corp. v Keating,* 465 US 1, 104 S Ct 852) and this State (*Nationwide Gen. Ins. Co. v Investors Ins. Co.,* 37 NY2d 91) favor arbitration as a means of resolving controversies. The Court of Appeals stated in *Matter of Sprinzen* (*Nomberg*) (46 NY2d 623, 629) that: "[i]n furtherance of the laudable purposes served by permitting consenting parties to submit controversies to arbitration, the law has adopted a policy of noninterference, with few exceptions, in this mode of dispute resolution." Similarly, the Federal courts follow this same general policy of noninterference with arbitration awards (*Matter of Andros Compania Maritima* [*Rich & Co.*], 579 F2d 691 [2d Cir]).

Recently, the United States Supreme Court held, unequivocally, that the Federal Arbitration Act (9 USC) preempts State law when a transaction affects interstate commerce (*Southland*

*Corp. v Keating, supra*). Since the subject shares involve interstate commerce, we are required to apply the Federal Arbitration Act to decide this case.

An award may only be vacated under Federal law if it violates a ground set forth in section 10 of the Arbitration Act (*Matter of I/S Stavborg v National Metal Converters,* 500 F2d 424 [2d Cir]). These grounds are:

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (9 USC § 10.)

After analyzing the defendant's alleged violation of the securities law argument, we conclude that it fails as a matter of law to qualify as a ground to vacate an award. In fact, defendant's allegation that the conduct would violate the securities law is just that: a mere allegation. Therefore, the award is valid and we reinstate it.

We note, in passing, that defendant's own witness at the arbitration hearing admitted that, if the plaintiff had received the information in time, the plaintiff could have exercised these rights within the law. Concur — Sandler, J. P., Ross, Bloom, Milonas and Ellerin, JJ.